IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | 1:20-CV-273-RP |
| META 1 COIN TRUST, ROBERT P. DUNLAP, *individually and d/b/a Clear International Trust*, NICOLE BOWDLER, DAVID A. SCHMIDT, PRAMANA CAPITAL, INC., and PETER K. SHAMOUN *a/k/a* PETER K. SHAMOON, | § § § § § § § § § | |
| Defendants. | § § | |

## ORDER

On April 20, 2020, the Court held a hearing by videoconference and telephone[1] after granting Plaintiff Securities and Exchange Commission's (the "SEC") Emergency Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt. (Minute Entry, Dkt. 37; Mot. Show Cause, Dkt. 32). The purpose of the hearing was to allow Defendants Meta 1 Coin Trust, Robert P. Dunlap, *individually and d/b/a* Clear International Trust ("Dunlap"), Nicole Bowdler ("Bowdler"), and David A. Schmidt ("Schmidt") (collectively, the "Meta 1 Defendants") an opportunity to be heard and to show cause for why they should not be held in contempt. None of the Meta 1 Defendants appeared at the hearing. (Minute Entry, Dkt. 37, at 1).

---

[1] "While the Court would typically hold this hearing in person, it does so by videoconference in this case in light of the COVID-19 pandemic." (Order, Dkt. 33, at 3 n.2 (citing Order Regarding Court Operations under the Exigent Circumstances Created by the COVID-19 Pandemic (W.D. Tex. filed Mar. 13, 2020), https://www.txwd.uscourts.gov/wp-content/uploads/2020/03/Order-Re-COVID-19.pdf)).

After considering the evidence in the record, including Dunlap's three filings so far in this case, (Dkt. 18, 27, 35), the SEC's arguments at the hearing, and the relevant law, the Court finds each of the Meta 1 Defendants in civil contempt.

## I. BACKGROUND

This case involves the Meta 1 Defendants' digital currency, the "Meta 1 Coin." (Compl., Dkt. 1, at 1–2). They solicited investors in an initial coin offering, claiming that the currency is backed by billions of dollars in fine art and/or gold and guaranteeing massive increases in value. (*Id.*). The SEC alleges that the enterprise "is nothing but a vehicle to steal investors' money." (*Id.* at 2). The SEC argues that the Meta 1 Defendants worked with Defendants Pramana Capital, Inc. and Peter K. Shamoun *a/k/a* Peter K. Shamoon to funnel money into various accounts. (*Id.* at 22–24).

The Meta 1 Defendants frequently post on their social media accounts about the currency, discuss it on regular YouTube broadcasts, and promote it in an email newsletter. (Compl., Dkt. 1, at 8–21). The SEC has previously represented that according to its most recent accounting, the Meta 1 Defendants have obtained over $8 million from investors.

The Meta 1 Defendants have actively resisted the SEC's prelitigation investigation and its subsequent communications after filing this case. (*See id.* at 21). They return documents with the word "fraudulent" written over them, (*see id.*), and have filed documents with the Court rejecting its jurisdiction and claiming the SEC is illegitimate, (*see* Dkt. 18, 27, 35). The SEC interviewed Dunlap, but he refused to answer many questions. (Compl., Dkt. 1, at 21–22).

On March 16, 2020, the Court issued a temporary restraining order and several associated orders prohibiting the Meta 1 Defendants from violating "Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5]," "Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]," and "Section 5 of the Securities Act [15 U.S.C. § 77e]." (Dkt. 8 at 3–6). The Court also barred the Meta 1 Defendants from "directly or indirectly (through an

entity they control or otherwise) participating in the issuance, purchase, offer, or sale of any securities provided." (*Id.* at 7). In other words, they were prohibited from continuing to defraud current and potential investors in the Meta 1 Coin and accept payments for the Meta 1 Coin. The Meta 1 Defendants were also instructed to file a sworn accounting of investor funds with the Court on or before March 26, 2020. (*Id.* at 14). And the Court ordered the Meta 1 Defendants' assets frozen. (*Id.* at 7–12).

On March 27, 2020, the Court granted SEC's motion for alternate service by email after the SEC established its substantial difficulty in effecting personal service. (Order, Dkt. 19). Both the SEC and the Courtroom Deputy have emailed all hearing-related filings in the case to the Meta 1 Defendants.

On April 13, 2020, the Court held a preliminary injunction hearing by telephone. (Minute Entry, Dkt. 30). The Meta 1 Defendants did not appear. (*Id.* at 1). The Court granted a preliminary injunction the same day, which imposed the same terms as the temporary restraining order, (Dkt. 8). (Mot. Prelim. Inj., Dkt. 24; Order, Dkt. 31).

In its motion for an order to show cause for why the Meta 1 Defendants should not be held in contempt, the SEC argues that after receiving notice of the Court's temporary restraining order and associated orders, (Dkt. 8), the Meta 1 Defendants "have each disregarded and violated the Orders by: (1) continuing to violate the antifraud provisions of the federal securities laws; (2) continuing to participate in the offer and/or sale of securities; and (3) failing to prepare and file a sworn accounting of investor funds."[2] (Mot. Show Cause, Dkt. 32, at 2). The SEC asks the Court to find the Meta 1 Defendants in civil contempt and impose "sanctions of a 'fine or imprisonment, or both.'" (*Id.* at 8 (quoting 18 U.S.C. § 401)). In support of its request, the SEC points to evidence

---

[2] The SEC has previously stated that it "has not sought preliminary injunctive relief against Relief Defendants Pramana Capital, Inc. and Peter K. Shamoun a/k/a Peter K. Shamoon." (Mot. PI, Dkt. 24, at 1 n.1).

already in the record and attaches additional evidence to the effect that the Meta 1 Defendants continue to market the Meta 1 Coin to their email list and host online seminars. (*Id.* (citing Dkt. 17, 24); Emails, Pl.'s Ex. A, Dkt. 32-1, at 2–9; Audio Tr., Pl.'s Ex. B, Dkt. 32-2, at 2–9; Meta 1 White Paper, Dkt. 32-3, at 2–7). In the Meta 1 Defendants' communications with investors, they explicitly, repeatedly, and disparagingly refer to this case and the SEC's attorneys, even accusing them of perjury. (*See, e.g.*, Mot. Show Cause, Dkt. 32, at 4–5). Their website remains active with full functionality. (*Id.* at 5). They have not filed an accounting. (*Id.*).

On April 20, 2020, after the show cause hearing, the SEC filed a motion to supplement its motion for an order to show cause. (Dkt. 38).[3] It seeks the same civil contempt findings as in its original motion, but it additionally asks the Court to order the Meta 1 Defendants to "cease and desist from posting content to YouTube, Facebook, or any social media" and "remove all content currently posted" that "(1) markets, offers, or attempts to sell the Meta 1 Coin; or (2) that makes false or misleading statements, including the statement that Meta1 owns $1 billion of art, gold mines or gold bars, or other assets in amounts sufficient to repay the Meta1 investors." (Proposed Order, Dkt. 38-2, at 4). The SEC asserts that "[s]ince the Court issued its TRO, Meta1 has posted at least 31 videos to its YouTube channel, all of which are publicly available worldwide. While the content varies, all of the videos either market the Meta 1 Coin, offer it for sale, or contain false and/or misleading statements about the nature of the investment." (Mot. Suppl., Dkt. 38, at 2). The most recent video was posted on April 20, 2020, the day of the show cause hearing. (*Id.*).

---

[3] The Court will refrain from ruling on this motion until the Meta 1 Defendants have had sufficient time to respond. *See* Part IV, *infra*.

In the past month, Dunlap has made three filings with the Court, each purporting to speak for all of the Meta 1 Defendants.[4] (Dkt. 18, 27, 35). In each, he asserts immunity from suit and argues that the Meta 1 Defendants are not subject to the Court's jurisdiction or the SEC's enforcement powers.[5] In his latter two filings, Dunlap attached a number of documents containing unredacted sensitive personal information; the Court sealed both filings *sua sponte* under Federal Rule of Civil Procedure 5.2(a). (Order, Dkt. 28; Order, Dkt. 36). His most recent filing, a response to the Court's order to show cause, acknowledges having received notice of the April 20, 2020, hearing. (Dkt. 35 at 1 ("Re: Order 4/16/20 Response")). Dunlap has also attempted to engage in ex parte communication by telephone a number of times, referring to the April 20, 2020, hearing and other materials filed in the case.

## II.  APPLICABLE LAW

Courts may impose sanctions for civil contempt as exercises of their inherent powers to protect their proper functioning and ensure "submission to their lawful mandates." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat) 204, 227 (1821)). This "justification for the contempt authority is at its pinnacle . . . where contumacious conduct threatens a court's immediate ability to conduct its proceedings." *Id.* at 832. "The violation of an injunction is a contempt against an entire court insofar as it flouts the court's

---

[4] While nonlawyer individual defendants may represent themselves in certain circumstances, they may not represent or assist in the self-representation of their codefendants. *See Martin v. City of Alexandria*, 198 F. App'x 344, 346 (5th Cir. 2006) (quoting *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)) ("[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause.").
[5] Dunlap's communications with the SEC and the Court thus far "are replete with identifying characteristics of the sovereign citizen movement" and raise arguments that are "indisputably meritless." *Westfall v. Davis*, No. 7:18-CV-00023-O-BP, 2018 WL 2422058, at *2–3 (N.D. Tex. May 4, 2018), *report and recommendation adopted*, No. 7:18-CV-023-O-BP, 2018 WL 2414794 (N.D. Tex. May 29, 2018); *see generally United States v. Weast*, 811 F.3d 743, 746 n.5 (5th Cir. 2016) ("The sovereign citizen movement is a loose grouping of litigants, commentators, and tax protesters who often take the position that they are not subject to state or federal statutes and proceedings."); Caesar Kalinowski IV, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153, 193 (2019) ("Voicing concerns over the federal government's overreach into citizens' lives, Sovereign Citizens make the unfortunate mistake of relying on non-binding or irrelevant legal definitions and misreading judicial opinions to avoid regulation or invoke rights that have no basis in law.").

basic authority to preserve order and administer justice." *In re McLean*, 794 F.3d 1313, 1319 (11th Cir. 2015) (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987)).

Generally, "[j]udicial sanctions in civil contempt proceedings [are] employed for either or both of two purposes: to coerce the defendant into compliance with the court's order [or] to compensate the complainant for losses sustained." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000). The SEC, as the party seeking a finding of contempt, "bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). The allegedly "contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *Am. Airlines*, 228 F.3d at 581.

Moreover, failure to attend a civil contempt hearing can be a separate ground for a finding of civil contempt. *See, e.g.*, *In re Shah*, 200 F. App'x 349, 350 (5th Cir. 2006) (imposing civil contempt sanctions is appropriate when defendant fails to appear at hearing); *RMC Publications v. Doulos PM Training*, No. CIV A 307-CV-2139-O, 2009 WL 1974286, at *2 (N.D. Tex. July 7, 2009) (same); *see also Quilling for Sardaukar Holdings, IBC v. 3-D Mktg., LLC*, No. 3-06-CV-0293-L, 2007 WL 9711514, at *3 (N.D. Tex. July 18, 2007) (corporate officers who do not appear at show cause hearings in cases to which their companies are parties are subject to civil contempt sanctions).

Civil contempt proceedings do not require the same procedural safeguards as do criminal contempt proceedings involving punitive sanctions. "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994); *see also Taggart v.*

6

*Lorenzen*, 139 S. Ct. 1795, 1801–02 (2019). In particular, "indirect contempts involving discrete, readily ascertainable acts . . . properly may be adjudicated through civil proceedings since the need for extensive, impartial factfinding is less pressing." *Bagwell*, 512 U.S. at 833.

Upon a finding of civil contempt, the Court may opt to impose sanctions, including incarceration and fines paid to the Clerk. "The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command." *Bagwell*, 512 U.S. at 828. "[T]he contemnor is able to purge the contempt and obtain his release by committing an affirmative act"—i.e., by complying with the Court's orders. *Id.* The same logic applies to fines ordered as civil contempt sanctions: "if the contemnor has [a] subsequent opportunity to reduce or avoid the fine through compliance," the fine is a permissible sanction for civil contempt. *Id.* at 829; *see Turner v. Rogers*, 564 U.S. 431, 442 (2011); *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. Unit B 1980) ("A coercive, nonpunitive fine payable to the clerk of the court is an appropriate tool in civil contempt cases."). When determining an appropriate sanction, the Court must consider, with appropriate findings made in the record, "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order." *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (quoting *United States v. United Mine Workers,* 330 U.S. 258, 304 (1947)).

When a district court makes a finding of civil contempt, determines that incarceration is an appropriate sanction, and the contemnor is located outside the district, the court may order that the contemnor be delivered to the district after being taken into federal custody. *See, e.g.*, *Edwards v. Bowles*, No. 3:03-CV-2624-M, 2004 WL 308036, at *1 (N.D. Tex. Feb. 18, 2004), *report and recommendation adopted,* No. 3:03-CV-2624-M, 2004 WL 741290 (N.D. Tex. Mar. 16, 2004).

### III. ANALYSIS

The Court finds that the SEC has established all three elements necessary to a finding of civil contempt by clear and convincing evidence. *See Martin*, 959 F.2d at 47. First, the Court's Orders were in effect. *See* Part II, *supra*. Second, the Orders required certain conduct by the Meta 1 Defendants. (*Id.* at 3–7, 12–16). Third, the SEC has presented sufficient evidence to show that the Meta 1 Defendants did not comply with the Court's Orders. (*See* Mot. Show Cause, Dkt. 32, at 2–5, 7–8; Emails, Pl.'s Ex. A, Dkt. 32-1, at 2–9; Audio Tr., Pl.'s Ex. B, Dkt. 32-2, at 2–9; Meta 1 White Paper, Dkt. 32-3, at 2–7; Mot. Suppl., Dkt. 38, at 2–3; Reece Decl., Dkt. 38-1 at 3–5 (listing YouTube videos); Meta 1 Email Excerpts, Pl.'s Exs. 1 & 2, Dkt. 38-1, at 7–18). The SEC's showing as to each of these elements provides "that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992) (quoting *Cruzan by Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 285 n.11 (1990)). The Meta 1 Defendants' noncompliance with the Court's orders involves their "discrete, readily ascertainable acts"; accordingly, the Court concludes they are amenable to adjudication through civil proceedings "since the need for extensive, impartial factfinding is less pressing." *Bagwell*, 512 U.S. at 833. Moreover, the Meta 1 Defendants' nonappearance at the show cause hearing, even after receiving notice, is a separate ground for findings of civil contempt. *See, e.g., Shah*, 200 F. App'x at 350.

Next, the Court determines that the appropriate sanction for Dunlap and Schmidt is incarceration until they comply with the Court's affirmative commands to provide a sworn accounting of investor funds and cease marketing and selling the Meta 1 Coin. *See Bagwell*, 512 U.S. at 828. First, the harm of noncompliance is high: Dunlap and Schmidt have already obtained

millions of dollars from putative investors, they continue to actively market their enterprise, and they show no signs of ceasing their activities related to the Meta 1 Coin. *See Lamar Fin. Corp.*, 918 F.3d at 567. Second, incarceration is likely to be effective: if incarcerated, Dunlap and Schmidt will be unable to continue Meta 1's operations, create marketing videos, or email their putative investors. *See id.* Third, the financial burden that fines would impose on Dunlap and Schmidt is insignificant. They have obtained millions of dollars in revenue from putative investors, so they are likely able to pay a reasonable fine. But they cannot, in the wake of the Court's asset freeze order. (Dkt. 8 at 7–12). As a result, a fine would, curiously, neither be especially burdensome nor particularly effective. *See Lamar Fin. Corp.*, 918 F.3d at 567. Fourth, the Court finds that Dunlap and Schmidt willfully disregarded the Court's Orders. *See id.* They continue to produce advertising videos and send marketing emails, and Dunlap's filings consistently contest the Court's foundational legal and legitimate authority, let alone its ability to require certain conduct from the Meta 1 Defendants or require their appearance at a hearing. Therefore, the Court finds that no sanction short of incarceration would adequately coerce Dunlap and Schmidt into compliance.

The Court finds that there is less evidence of Bowdler's conduct in failing to comply with the Court's orders. The majority of the SEC's allegations concerning noncompliance focus on Dunlap and Schmidt's conduct. (*See* Mot. Show Cause, Dkt. 32; Mot. Suppl., Dkt. 38). Thus, the harm of Bowdler's noncompliance appears to be less than that caused by Dunlap and Schmidt's noncompliance. *See Lamar Fin. Corp.*, 918 F.3d at 567. Despite Bowdler's apparent lesser role in the Meta 1 enterprise, affidavits signed by her that contest the Court's authority and jurisdiction have been filed, (*see, e.g.*, Dkt. 35-3 at 141–60), and she also did not appear at the show cause hearing, showing her willfulness in disregarding the Court's orders. *See Lamar Fin. Corp.*, 918 F.3d at 567. Although the Court indicated its initial intent to impose a fine on Bowdler at the civil contempt hearing, the Court now finds that a fine is not likely to effectively induce compliance at this time for

the same reasons discussed above. *See id.* Instead, the Court will allow Bowdler a final opportunity to comply with the Court's orders. *See* Part IV, *infra*.

Though the Court finds that Meta 1 Coin Trust is in civil contempt as well, it does not impose any sanction. Dunlap "created, owns, and controls" Meta 1 Coin Trust, "an incorporated entity." (Compl., Dkt. 1, at 5). Because Dunlap (and to a lesser extent Schmidt and Bowdler) is synonymous with Meta 1 Coin Trust (if it indeed exists as a legally cognizable entity), the Court finds that imposing duplicative sanctions would be ineffective. *See Bagwell*, 512 U.S. at 828.

### IV. CONCLUSION

Accordingly, having found that Dunlap and Schmidt are in **CIVIL CONTEMPT** of this Court, **IT IS ORDERED** that Dunlap and Schmidt shall be coercively incarcerated until they comply with the Court's orders, (Dkt. 8, 31). The Court emphasizes that this order is intended to ensure Dunlap and Schmidt's compliance with the Court's previous orders, not to punish them. *See United States v. Puente*, 558 F. App'x 338, 341–42 (5th Cir. 2013). Dunlap and Schmidt shall be released when they provide proof that they have complied with the Court's orders. (*See* Dkt. 8 at 3–7, 12–16; Dkt. 31 at 3–7, 11–13).

**IT IS FURTHER ORDERED** that the Clerk shall prepare and issue **BENCH WARRANTS** for Dunlap and Schmidt's arrests.

**IT IS FURTHER ORDERED** that the United States Marshals are directed, pursuant to that warrant, to **ARREST** Dunlap and Schmidt and deliver them to federal custody in the Western District of Texas.

**IT IS FURTHER ORDERED** that Bowdler shall provide proof, in writing, that she has complied with the Court's orders, (*see* Dkt. 8 at 4–7, 12–16; Dkt. 31 at 4–7, 11–13), by **April 24, 2020, at 5:00 p.m. CDT**. If Bowdler fails to provide this proof, the Court may find her in civil contempt and impose a coercive daily fine or incarceration.

**IT IS FURTHER ORDERED** that the Meta 1 Defendants may respond to the SEC's motion to supplement its motion for an order to show cause, (Dkt. 38), on or before **April 27, 2020.** *See* W.D. Tex. Loc. R. CV-7(e)(2). Their filings must comply with all applicable procedural rules, including Federal Rule of Civil Procedure 5.2 and the rule against pro se parties representing their codefendants. (*See* Order, Dkt. 36); note 4, *supra*; *see generally Ogbodiegwu v. Wackenhut Corrs. Corp.*, 202 F.3d 265, 1999 WL 1131884, at *2 (5th Cir. 1999) (per curiam) ("[P]ro se parties must still comply with the rules of procedure."). The Court will refrain from ruling on the SEC's motion until at least April 28, 2020; if the Meta 1 Defendants fail to respond, or their response is unpersuasive, the Court will consider adding the supplemental conditions for purging the Meta 1 Defendants' civil contempt that the SEC requests.

**IT IS FURTHER ORDERED** that the SEC shall serve the Meta 1 Defendants with copies of its motion to supplement its motion for an order to show cause, (Dkt. 38), by **April 21, 2020, at 10:00 p.m. CDT**, unless it already done so, (*see* Dkt. 38 at 4). (*See* Order, Dkt. 19 (permitting service by email)). Given the exigencies of this case, the Courtroom Deputy will serve copies of this Order on the Meta 1 Defendants by email. (*See id.*).

**SIGNED** on April 21, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE