IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:20-CV-273-RP |
| META 1 COIN TRUST, ROBERT P. DUNLAP, *individually and d/b/a Clear International Trust*, NICOLE BOWDLER, and DAVID A. SCHMIDT, | § § § § § | |
| Defendants, | § § | |
| PRAMANA CAPITAL, INC., PETER K. SHAMOUN *a/k/a* PETER K. SHAMOON, WANDA IRONHEART TRAVERSIE-WARNER, ALFRED DEWITT WARNER, JR., and IRONHEART TRUST, | § § § § § § | |
| Relief Defendants. | § § | |

## ORDER

Before the Court is Plaintiff Securities and Exchange Commission's ("SEC") Motion for Default Judgment against Meta 1 Coin Trust ("Meta 1"), Robert P. Dunlap, individually and d/b/a Clear International Trust ("Dunlap"), and Nicole Bowdler ("Bowdler") (together, "Defendants"); and (2) Relief Defendants Wanda Ironheart Traversie-Warner ("Traversie"), Alfred Dewitt Warner Jr. ("Warner"), and Ironheart Trust ("Ironheart") (together, "Relief Defendants"). (Dkt. 109). Having considered the SEC's motion, the record, and the relevant law, the Court finds that the motion should be granted.

### I. BACKGROUND

The SEC alleges the following facts in its complaint. (Am. Compl., Dkt. 62-1). From April 2018 through the present (the "relevant period"), Defendants, both directly and through entities

they control, have raised over $9 million from at least 500 investors throughout the United States and internationally, through deceptive acts and materially false and misleading statements and omissions, including asserting that investors were purchasing asset-backed digital coins.[1] (*Id.* at ¶ 2). However, no digital currency actually existed. (*Id.* at ¶ 81). Defendants falsely "enticed investors with the allure of a cryptocurrency" and promised investment returns. (*Id.* at ¶ 3, 81). Defendants made misstatements on the Meta1 website, at in-person presentations and "workshops" across the United States and internationally, in email newsletters, on related websites, and on Internet radio broadcasts that are accessible on BlogTalkRadio, Youtube, and Facebook. (*Id.* at ¶ 4).

The SEC states that the investments offered by Defendants were "securities" within the meaning of Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)]. (*Id.* at ¶ 80). The SEC asserts that the offers and sales of these purported "Coins" were illegal offerings of securities for which no registration statement has been filed, and as to which no exemption from registration is or was available (the "Coin Offerings"). (*Id.* at ¶ 5). Further, the Coin Offerings were conducted through general solicitations made using statements posted on the Internet and distributed throughout the world, including in the United States and in this District. (*Id.*). Defendants took no steps to determine whether investors were accredited or sophisticated, and, in fact, disregarded evidence that they were neither. (*Id.*).

The SEC filed this action against Defendants, seeking a permanent injunction, disgorgement plus prejudgment interest, and civil penalties against each Defendant. (*Id.* at ¶ 9). The SEC also seeks disgorgement from Relief Defendants, who received diverted funds. (*Id.* at ¶ 9, 95).

---

[1] Additionally, Defendants have falsely stated that: (a) Meta1 owned $1 billion in art insured against loss by a surety bond, and later, that Meta1 owned $2 billion in gold assets; (b) KPMG, one of the largest independent financial audit firms in the world, was auditing Meta1's gold assets; (c) Meta1 formed its own investment bank and developed its own digital currency exchange; (d) the Coin is safe and risk-free and will never lose value; (e) an initial public offering of the Coin ("ICO") on its own exchange was imminent; and (f) each Coin, sold for either $22.22 or $44.44 would in two years be worth $50,000—up to a 224,923% return—as a "very conservative value." (Am. Compl., Dkt. 62-1, at ¶ 2).

The Court authorized alternative service by email on the Defendants; on March 23, 2020, the SEC served Defendants. (*See* Order, Dkt. 19, at 4; Mot., Dkt. 17; Reece Decl., Dkt. 17-1, at 10 ("On March 23, 2020, at 6:11 P.M., I forwarded the Court's Orders . . . via email [to Defendants] at their known email addresses.")). Relief Defendants were served on May 15 and 16, 2020. (Dkts. 59, 60, 61). None of the Defendants or Relief Defendants have appeared in this action. The SEC now moves for default judgment against them. (Dkt. 109). As Defendants and Relief Defendants have not appeared, the SEC's motion is unopposed.

## II. LEGAL STANDARD AND DISCUSSION

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant that has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(a)–(b). That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment simply because the defendant is in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

In considering the SEC's motion, the Court must determine: (1) whether default judgment is procedurally warranted, (2) whether the SeC's complaint sets forth facts sufficient to establish that it is entitled to relief, and (3) what form of relief, if any, the SEC should receive. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008); *see also J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (using the same framework).

## A. Procedural Requirements

To determine whether entry of a default judgment is procedurally warranted, district courts in the Fifth Circuit consider six factors: "[1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

On balance, the *Lindsey* factors weigh in favor of entering a default judgment against Defendants and Relief Defendants. Because Defendants and Relief Defendants have not filed a responsive pleading, there are no material facts in dispute. *See Nishimatsu Const. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Defendants and Relief Defendants' failure to appear and respond has ground the adversary process to a halt, prejudicing the SEC's interest in pursuing it claim for relief. *See J & J Sports*, 126 F. Supp. 3d at 814 ("Defendants' failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests.") (citation and quotation marks omitted). The grounds for default are established: Defendants and Relief Defendants were properly served and have failed to appear and file a responsive pleading. There is no indication that the default was caused by a good faith mistake or excusable neglect. Although a default judgment in this case is not insignificant, the Court is not aware of any facts that would obligate it to set aside the default if challenged by Defendants or Relief Defendants. The Court therefore finds that default judgment is procedurally warranted.

## B. Sufficiency of the SEC's Complaint

Default judgment is proper only if the well-pleaded factual allegations in the SEC's complaint establish a valid cause of action. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. By defaulting, a

defendant "admits the plaintiff's well-pleaded allegations of fact." *Id.* In determining whether factual allegations are sufficient to support a default judgment, the Fifth Circuit employs the same analysis used to determine sufficiency under Rule 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While "detailed factual allegations" are not required, the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### 1. Sections 5(a) and 5(c) of the Securities Act

The SEC asserts Defendants violated Sections 5(a) and 5(c) of the Securities Act. Section 5 of the Securities Act requires that an offering of securities must be registered  with the SEC, unless an exception or exemption is available. *See* 15 U.S.C. § 77e. It operates as a strict liability statute. *Swenson v. Engle*, 626 F.2d 421, 424 (5th Cir. 1980). To establish a prima facie case for a violation of Sections 5(a) and 5(c) of the Securities Act, the Commission need only prove that: (1) the defendant, directly or indirectly, offered or sold securities; (2) no registration statement was in effect or filed with the Commission for the offer or sale of those securities; and (3) interstate transportation or communication, or the mails, were used in connection with the offer and sale. *See* 15 U.S.C. §§ 77e(a), 77e(c); *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901–02 (5th Cir. 1980); *SEC v. Continental Tobacco Co. of S.C.*, 463 F.2d 137, 155–56 (5th Cir. 1972). Once a prima facie case is made, the defendant is liable unless the offering was exempt or subject to an exception. The defendant bears the burden of proving any exemption from or exception to registration. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953).

The SEC alleges the following. Defendants offered and sold securities, the purported digital currency it called the Meta1 Coin. (*See, e.g.*, Am. Compl., Dkt. 62-1, at ¶ 80-82). Meta1's offerings were never registered with the SEC. (*Id.* at ¶¶ 5, 82). These securities were sold using interstate communication, namely Meta1's website, in person presentations, email newsletters, related websites, and radio broadcasts available online. (*Id.* at ¶ 59–78). These allegations are enough to raise the SEC's right to relief above a speculative level. *Wooten*, 788 F.3d at 498. The SEC alleges no registration exemption applies. As Defendants have not answered, they fail to meet their burden to plead and prove reliance on a registration exemption. *See Sec. & Exch. Comm'n v. Ralston Purina Co.*, 346 U.S. 119, 124–26 (1953); *SEC v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980). Default judgment is substantively warranted against Defendants on this claim.

2.  <u>Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5</u>

The SEC also asserts Defendants violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Section 17(a) of the Securities Act prohibits the employment of a fraudulent scheme or the making of material misrepresentations or omissions in the offer or sale of a security. 15 U.S.C. § 77q(a). Section 10(b) of the Exchange Act prohibits using a manipulative or deceptive device or contrivance in connection with the purchase or sale of a security. 15 U.S.C. § 78j(b). Rule 10b-5 thereunder makes it unlawful, in connection with the purchase or sale of securities: (a) to employ any device, scheme, or artifice to defraud; or (b) to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. 17 C.F.R. § 240.10b-5. A violation of these provisions occurs if the misrepresented or omitted facts are material. Information is material if there is a substantial likelihood that reasonable investors would consider the information important in their investment

decision and would view it as having significantly altered the total mix of available information. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder require a showing of scienter, while Sections 17(a)(2) and (3) of the Securities Act require a showing of negligence. *Aaron v. SEC*, 446 U.S. 680, 701–02 (1980). Scienter is the "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). In the Fifth Circuit, scienter may be established by showing that the defendant acted intentionally or with severe recklessness. *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (stating that scienter is an "'intent to deceive, manipulate, or defraud' or 'that severe recklessness' in which the 'danger of misleading buyers or sellers is either known to the defendant or so obvious that the defendant must have been aware of it'"); *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961–62 (5th Cir. 1981). Proof of recklessness may be inferred from circumstantial evidence. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390–91 n.30 (1983).

The SEC alleges that Defendants made numerous representations on Meta1's website and offering brochure, and during investor presentations in-person and online, that violated these statutes and Rule 10b-5. (*See* Mot., Dkt. 109, at 14). The SEC alleges that Defendants knew or were reckless in not knowing that these representations were untrue. (Compl., Dkt. 1, at ¶ 52.).

The SEC asserts that Dunlap created and owns Meta1 and is responsible for its activities. (Compl., Dkt. 1, at ¶ 14.). The SEC also alleges that Bowdler served on the "board" of Meta1 and, with Dunlap, had access to Meta1 bank accounts, and moved funds to her own personal account. (Hahn Decl., Dkt. 3-3, at ¶ 10, 14–16, 19–22; Am. Compl., Dkt. 62-1, at ¶ 85). The SEC also states that Bowdler and Dunlap appeared on an internet talk show to promote the coin where they jointly made numerous false claims about Meta1. (Am. Compl., Dkt. 62-1, at ¶ 61–62).

These allegations are enough to raise the SEC's right to relief above a speculative level and establish that each of the Defendants violated the securities anti-fraud provisions with scienter. *See Wooten*, 788 F.3d at 498.  Default judgment is substantively warranted against Defendants on these claims.

3.  <u>Relief Defendants</u>

The SEC also alleges that the Relief Defendants received the proceeds of the fraud and had no legitimate claim to those investor funds. (Am. Compl., Dkt. 62-1, at ¶ 100.) Specifically, the Complaint details the flow of investor funds into and out of bank accounts controlled by the Relief Defendants at various banks, which continued after the Court issued its Order freezing assets. (*Id.* at ¶¶ 92, 96-100; *see also* Hahn Decl., Dkt. 53-1, at ¶¶ 7–19). These allegations are enough to raise the SEC's right to relief from relief defendants above a speculative level. *Wooten*, 788 F.3d at 498. Default Judgment is substantively warranted against relief defendants.

**C. Relief**

Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In other words, the relief prayed for in a complaint defines the scope of relief available on default judgment. *Id.*

A defendant's default concedes the truth of the allegations of the complaint concerning the defendant's liability, but not damages. *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, when the amount of damages or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of

mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311.

In its complaint, the SEC seeks injunctive relief, disgorgement plus prejudgment interest, and civil penalties against each Defendant, and disgorgement from Relief Defendants. (*Id.* at ¶ 9, 95). In its motion for default judgment, the SEC seeks injunctive relief now and seeks disgorgement plus prejudgment interest, and civil penalties in amounts to be determined by the Court upon later motion of the SEC. (Mot., Dkt. 109, at 16).

1. Permanent Injunction

Injunctive relief is expressly authorized by Congress to proscribe future violations of the federal securities laws. *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998). The Securities Act and the Exchange Act each provide for injunctive relief when their provisions have been violated. *See* 15 U.S.C. §§ 77t(b), 78u(d). Pursuant to those provisions, a defendant may be permanently enjoined from further violations of the acts. *Id.*

To establish the need for a permanent injunction, the SEC must show that Defendants violated the securities laws and that there is a reasonable likelihood that each will engage in future violations if not enjoined. *See Cavanagh*, 155 F.3d at 135; *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99–100 (2d Cir. 1978); *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1311 (S.D. Fla. 2007); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007).

In assessing the likelihood of future violations, courts consider the totality of the circumstances surrounding the defendant and his violations. *SEC v. Zale Corp.*, 650 F.2d 718, 720–21 (5th Cir. 1981). A court considers the following factors in determining whether there is a reasonable likelihood of future violations: (1) the egregiousness of the defendant's actions; (2) the isolated or recurrent nature of the violations; (3) the degree of scienter involved; (4) the defendant's recognition of the wrongful nature of his conduct; (5) the sincerity of the defendant's assurances against future

violations; and (6) the likelihood that defendant's occupation will present opportunities for future violations. *K.W. Brown & Co.*, 555 F. Supp. 2d at 1311; *see also Cavanagh*, 155 F.3d at 135. "No single factor is determinative; instead, the district court should determine the propensity for future violations based on the totality of circumstances." *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1228 (D.C. Cir. 1989).

The SEC's allegations and the totality of the circumstances weigh in favor of granting an injunction. The SEC has sufficiently alleged that Defendants violated multiple securities laws, which has been ongoing since April of 2018. The conduct has continued even after several orders of this Court, including contempt orders and a bench warrant for Dunlap's arrest. (*See, e.g.*, Dkt. 39). In failing to answer, Defendants have not offered any assurances against future violations. Accordingly, a permanent injunction is warranted.

### 2.   Monetary remedies

A court may order a party to disgorge net profits flowing from securities law violations to prevent the wrongdoer from enriching himself by his wrongs. *Liu v. SEC*, 140 S. Ct. 1936, 1943 (2020). As for the Relief Defendants, a court may order equitable relief against "a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *SEC v. George*, 426 F.3d 786, 798 (6th Cir. 2005) (quoting *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998)); *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). Further, an award of prejudgment interest prevents wrongdoers from benefitting from what is, in effect, an interest-free loan resulting from their illegal activity. *SEC v. Evolution Capital Advisors, LLC*, 2013 WL 5670835, *3 (S.D. Tex. Oct. 16, 2013).

Additionally, the Court is authorized to assess civil penalties by Section 20(d) of the Securities Act of 1933 and Section 21(d) of the Securities Exchange Act of 1934, which establish an escalating, three-tier structure for securities violations depending upon the egregiousness of the defendant's

conduct. 15 U.S.C. §77t(d); 15 U.S.C. §78u(d)(3), and 17 C.F.R. 201.1001 (increasing statutory amounts to reflect inflation). Congress enacted these penalty provisions "to achieve the dual goals of punishment of the individual violator and deterrence of future violations." *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998). A civil penalty is necessary because "disgorgement . . . does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud . . . ," and ". . . is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator." *SEC v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996) (quoting H.R. Rep. No. 101-616 (1990)).

However, the SEC states that it requires additional time to develop the evidence to establish the proper amount of monetary remedies to be imposed. (Mot., Dkt. 109, at 20). Defendants and Relief Defendants have not provided any documentation of investor funds as they likely would have been required to if they had appeared. As a result, the SEC "has undertaken significant post-filing effort to trace the flow of investor funds through various bank accounts, both domestic and international." (*Id.*). The SEC also states it continues to investigate what additional investor funds have been solicited and received since the filing of this action. (*Id.*) (citing Reece Dec., ¶¶ 2-8).

The SEC has sufficiently alleged that Defendants violated securities law and that Relief Defendants have no legitimate claim to the investor funds they acquired. The Court will order that Defendants pay disgorgement with prejudgment interest and civil penalties, and that the Relief Defendants shall pay disgorgement, in amounts to be determined by the Court after an appropriate motion from the SEC.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that the SEC's Motion for Default Judgment, (Dkt. 109), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a) to employ any device, scheme, or artifice to defraud;

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

**IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a).

**IT IS FURTHER ORDERED** that Defendants are permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a) to employ any device, scheme, or artifice to defraud;

(b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

or

(c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

**IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a).

**IT IS FURTHER ORDERED** that Defendants are permanently restrained and enjoined from violating Section 5 of the Securities Act [15 U.S.C. § 77e] by, directly or indirectly, in the absence of any applicable exemption:

(a) Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

(b) Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

(c) Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

**IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a).

**IT IS FURTHER ORDERED** that Defendants shall pay disgorgement of ill-gotten gains and prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

**IT IS FURTHER ORDERED** that Relief Defendants shall pay disgorgement of all funds they have received in connection with the Defendants' illegal acts described in the Amended Complaint.

The Court shall determine the amounts of the disgorgement and/or civil penalty upon motion of the SEC. Prejudgment interest shall be calculated from March 16, 2020, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). **IT IS ORDERED** that the SEC shall file either a motion addressing the appropriate amounts for monetary penalties or a report apprising the Court of the status of this case on or before **April 5, 2021**.

**SIGNED** on February 8, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE