IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    Plaintiff,<br><br>v.<br><br>META 1 COIN TRUST, ROBERT P. DUNLAP, individually and d/b/a CLEAR INTERNATIONAL TRUST, NICOLE BOWDLER, and DAVID A. SCHMIDT,<br>    Defendants,<br><br>and<br><br>PRAMANA CAPITAL, INC., PETER K. SHAMOUN a/k/a PETER K. SHAMOON, WANDA IRONHEART TRAVERSIE-WARNER, ALFRED DEWITT WARNER JR., and IRONHEART TRUST,<br>    Relief Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  Civil Action No.: 1:20-cv-273-RP<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Plaintiff Securities and Exchange Commission's ("Commission") Motion for Monetary Remedies and for Entry of Final Judgment as to All Defendants and Warner Relief Defendants and Brief in Support (Dkt. #133) is before the court.[1] No party filed a response. After reviewing the pleadings, the relevant case law, as well as the entire case file, the undersigned recommends the District Court **GRANT** the motion.

---

[1] The motion was referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

I. **PROCEDURAL HISTORY**

The court entered an Agreed Partial Judgment against Defendant David A. Schmidt ("Schmidt") (Dkt. #101) and granted Plaintiff's Motion for Default Judgment as to the Defaulting Defendants and the Warner Relief Defendants ("Default Order") (Dkt. # 114). The court imposed permanent injunctive relief as to the Defaulting Defendants, *see id.* at 12-14, and ordered that the Defaulting Defendants "shall pay disgorgement of ill-gotten gains and prejudgment interest thereon, and a civil penalty[]." *Id.* at 14. The court further ordered that the Warner Relief Defendants "shall pay disgorgement of all funds they have received in connection with the Defendants' illegal acts described in the Amended Complaint." *Id.*

As to Schmidt, on October 5, 2020, the court entered an agreed partial judgment (Dkt. #101) imposing injunctive relief, and ordering that the court shall determine whether monetary remedies are appropriate, and if so, in what amounts, given the facts alleged in the Redacted Amended Complaint (Dkt. # 63 "Complaint"), which the court accepts and deems true. *See* Dkt. #101 at 5, ¶ V. Schmidt is precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint. *Id.*

For purposes of this motion, Schmidt has admitted the allegations in the SEC's Complaint. *See* Dkt. #100-1 at 4. Likewise, because Defendants have defaulted, the "well pleaded allegations of fact" against them are admitted. *See* Dkt. #114 at 4-5 (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Thus, in determining the appropriate monetary remedies to be imposed against the parties, the court accepts as true that: (1) Defendants committed securities fraud in violation of Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder and Section 17(a) of the Securities Act of 1933 ("Securities Act"); (2) in committing their fraudulent scheme, Defendants acted with a high degree of scienter; (3) Defendants offered or sold unregistered securities in violation of Sections 5(a) and

5(c) of the Securities Act; and (4) the Warner Relief Defendants are in possession of ill-gotten gains, to which they have no legitimate claim.

Plaintiff Securities and Exchange Commission ("Commission") has now filed a Motion for Monetary Remedies and Brief in Support, and Motion for Entry of Final Judgment as to: (1) Defendants Meta 1 Coin Trust ("Meta1"), Robert P. Dunlap, individually and d/b/a Clear International Trust ("Dunlap"), and Nicole Bowdler ("Bowdler") (together, "the Defaulting Defendants"); (2) Schmidt (collectively, with the Defaulting Defendants "Defendants"); and (3) Relief Defendants Wanda Ironheart Traversie-Warner ("Traversie"), Alfred Warner ("Warner"), Ironheart Trust ("Ironheart") (together, the "Warner Relief Defendants") (Dkt. #133) ("Motion"). The Commission requests: (1) an order finding Defendants and the Werner Relief Defendants liable to pay disgorgement, prejudgment interest ("PJI") and/or civil penalties as requested herein; and (2) the entry of the proposed final judgments attached to its motion as to all remaining parties.[2]

## II. FINDINGS OF FACT

1. From April 2018 through the present, working in collaboration with each other, Defendants raised over $15.2 million from at least 800 investors in 40 states and eight foreign countries in a fraudulent and unregistered securities offering in the form of bogus crypto assets they called the "Meta1 Coin." Compl. ¶ 2; Hahn Dec. ¶ 20 (updating the numbers). Defendants enticed investors with the allure of a cryptocurrency, but the securities offering is nothing but a vehicle to steal investors' money. Compl. ¶ 3.

---

[2] The district court enjoys wide latitude in determining damages after a default judgment. *Joe Hand Promotions, Inc. v. Fusion Hookah, LLC*, No. A-16-CV-1339-RP, 2018 U.S. Dist. LEXIS 146530, at *11 (W.D. Tex. 2018). As a general rule, courts may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). It is a matter within the court's discretion whether to hold a hearing before awarding damages in a default judgment. *See* FED. R. CIV. P. 55(b)(2) (in determining amount of damages entered in default, court may conduct such hearings or order such references to determine amount of damages "as it deems necessary and proper"); *James*, 6 F.3d at 310 (district court has wide latitude in deciding whether to require evidentiary hearing before entering default judgment).

2. Defendants have stated that: (a) investors were, in fact, purchasing asset-backed digital coins; (b) Meta1 owned $1 billion in art insured against loss by a surety bond, and later, that Meta1 owned $2 billion [and now $8.8 billion] in gold assets; (c) KPMG, one of the largest independent financial audit firms in the world, was auditing Meta1's gold assets; (d) Meta1 formed its own investment bank and developed its own digital currency exchange; (e) the Coin is safe and risk-free and will never lose value; (f) an initial public offering of the Coin ("ICO") on its own exchange was imminent; and (g) each Coin, sold for either $22.22 or $44.44 would in two years be worth $50,000—up to a 224,923% return—as a "very conservative value." *Id.* ¶ 2. All of those statements are false. *Id*.

3. Each of the Defendants acted with a high degree of scienter. *Id*. ¶ 3.

4. Accounting for returns to investors, the total amount of ill-gotten gains or net profits realized among the parties is $13,451,212.89. Hahn Dec. ¶¶ 20-22. Because Meta1 is wholly a fraudulent operation and illegal scheme orchestrated by the Defendants, there are no legitimate business expenses to be deducted from the total amount of net profits.

5. Investor money was not used for the stated purpose of the investment. Instead, investor money was distributed to Meta1-related individuals, used to pay bills (such as credit card and loan payments), and used to pay personal expenses and costs associated with marketing the fraud scheme. Hahn Dec. ¶¶ 15-17, 23.

6. Dunlap continues to operate the Meta1 scheme through various Meta1 associates. From the start of the scheme through March 16, 2020, when the court entered its temporary restraining order and imposed an asset freeze (Dkt. #8, the "Initial TRO"), a significant portion of the Meta1 investor proceeds were sent or deposited into accounts controlled by Pramana Capital, Inc. and Peter K. Shamoun a/k/a Peter K. Shamoon (the "Shamoon Relief Defendants"). *Id*. ¶ 6.

7. After the court froze Shamoon's accounts, Meta1 investor funds were directed to

accounts controlled by the Warner Relief Defendants. *Id*. ¶ 8. After the court froze the Warner Relief Defendants' accounts, Meta1 investor funds were directed to accounts controlled by Meta1 board member Richard Grassie. *Id*. ¶ 9. Grassie continued a pattern established by Meta1 and Dunlap: open and use a bank account for a short period of time, deposit investor funds, spend investor funds on purposes not disclosed to investors, including the withdrawing of investor funds using cashier's checks to pay other related third parties, and then open a new bank account at a different bank to repeat the process again. *Id*. ¶ 10.

8. Dunlap directed or caused Meta1 to transfer the proceeds of Defendants' fraud to entities he controlled and persons acting in concert with him, including Bowdler in the amount of $1,540,679.48 (representing her net profit), and the Shamoon Relief Defendants in the amount of $7,457,998. *Id*. ¶¶ 26-27. Of the amount transferred to the Shamoon Relief Defendants, $5,938,180.21 has not been turned over to the Commission for distribution to victims. *Id*. ¶ 26. Further, Dunlap funneled the proceeds of the Defendants' fraud to the Warner Relief Defendants in the amount of $1,057,408.63. *Id*. ¶ 29. None of the Warner Relief Defendants has a legitimate claim to these funds, which represent investor funds gained by the Defendants through fraud. *Id*.

9. Schmidt's net profit is at least $24,210. *Id*. ¶ 31.

10. The Commission seeks to recover disgorgement so that it may return those funds to investors who lost significant sums of money when they invested money in the fraudulent scheme.

11. The conduct of each of the Defendants involved fraud, deceit, manipulation, or deliberate disregard of a regulatory requirement and directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

### III.   CONCLUSIONS OF LAW

1. The Commission is authorized to seek, and the court is authorized to order, disgorgement that does not exceed a wrongdoer's net profits and is awarded for victims. 15 U.S.C. §

78u(d)(7); *see also id.* § 78u(d)(5). The district court has broad discretion in calculating the amount to be disgorged. *See, e.g., SEC v. Helms*, 2015 WL 5010298, *19 (W.D. Tex. Aug. 21, 2015) (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir.1993)). Disgorgement need only be a reasonable approximation of profits causally connected to the violation. *See, e.g., Helms*, 2015 WL 5010298, at *19 (citing *SEC v. Seghers*, 298 F. Appx. 319, 336 (5th Cir. 2008)). In determining an approximate amount of ill-gotten profits, the risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty. *SEC v. Voight*, 2021 WL 5181062, at *7 (S.D. Tex. June 28, 2021) (quoting *First City Fin'l Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)). Doubts are to be resolved against the defrauding party. *SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983).

2. An order for disgorgement and pre-judgment interest against each Defendant is proper because each Defendant violated the federal securities laws.

3. The court may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds. This Court has the equitable power to order the Relief Defendants to disgorge all proceeds of fraud they received to prevent them from being unjustly enriched through the Defendants' wrongdoing.

4. Courts have flexibility to impose joint and several liability against individuals or partners engaged in concerted wrongdoing. *Liu v. SEC*, 140 S. Ct. 1936, 1945, 1949 (2020).

5. An award of pre-judgment interest in a case involving violations of the federal securities laws rests within the equitable discretion of the district court to be exercised according to considerations of fairness. *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2nd Cir.1972); 15 U.S.C. § 78u(d)(7); *see also id.* § 78u(d)(5) Where a securities law violator has enjoyed access to funds over a period of time as a result of his or her wrongdoing, requiring the wrongdoer to pay prejudgment interest is consistent with the equitable purpose of the remedy of disgorgement.

6.      The IRS underpayment of federal income tax rate as set forth in 26 U.S.C. § 6621(a)(2) is appropriate for calculating prejudgment interest in SEC enforcement actions such as this one. That rate of interest reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud.

7.      The Securities Act and the Exchange Act both authorize courts to impose civil penalties, and establish an escalating, three-tier structure for securities violations depending upon the egregiousness of the defendant's conduct and the losses (or risk of losses) to investors. 15 U.S.C. §77t(d); 15 U.S.C. §78u(d)(3), and 17 C.F.R. 201.1001 (increasing statutory amounts to reflect inflation). These penalties are designed to punish individual violators and deter future violations of the securities laws, which is necessary because, without civil penalties, the only financial risk to violators is the forfeiture of their ill-gotten gains.

8.      The Commission has established that Defendants' violations involved fraud and deceit and resulted in substantial losses of over $13.4 million to investors. Each of the Defendants is therefore subject to a third-tier penalty. The amount of civil penalties to assess within the permissible statutory range is left to the Court's discretion.

9.      Under these statutes, the court may impose a civil penalty against a defendant not exceeding the greater of $207,183 for a natural person or $1,035,909 for any other person per violation or the gross amount of pecuniary gain to such defendant as a result of the violation. Because each of the Defaulting Defendant's gross pecuniary gain far exceeds the maximum statutory amount, those amounts are the maximum penalty that the court may impose.

10.     In determining the appropriate penalty, the court considers: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the

defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. *SEC v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615, 623 (W.D. Tex. 2014).

11. The following monetary relief is appropriate in this case:

| Party | Disgorgement | PJI | Penalty | Total |
|---|---|---|---|---|
| **Meta1** and **Dunlap,** jointly and severally | **$10,849,776.47** | $939,183.45 | $10,849,776.47 | $22,638,736.39 |
| Of that total disgorgement: | | | | |
| **Meta1** and **Dunlap,** jointly and severally | $3,370,916.78 | $291,794.87 | | |
| **Meta1/Dunlap,** jointly and severally with Shamoon Relief Defendants | $5,938,180.21 | $514,023.55 | | |
| Meta1/Dunlap jointly and severally with **Bowdler** | $1,540,679.48 | $133,365.03 | | |
| **Bowdler,** jointly and severally with Meta1/Dunlap | **$1,540,679.48** | $133,365.03 | $1,540,679.48 (individual penalty) | $3,214,723.99 |
| **Schmidt** | **$24,210.00** | $2,095.68 | $24,210.00 | $50,515.68 |
| **Warner Relief Defendants,** jointly and severally | **$1,057,408.63** | $91,531.90 | N/A | $1,148,940.53 |

### III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Monetary Remedies and for Entry of Final Judgment as to All Defendants and Warner Relief Defendants and Brief in Support (Dkt. #133) be **GRANTED**. The undersigned further **RECOMMENDS** the proposed order and final judgments at Dkt. #133-2 through #133-5 be entered.

### IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED February 7, 2023,

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE